## MORRELL *v.* CAWOOD.

1. RESULTING TRUST. *Joint purchasers.* A resulting trust in land is not raised in favor of the payor of the purchase money, where he, and another, jointly purchased land, upon the agreement and understanding that each was to pay a certain proportion of the money, and took a deed therefor, but the other party failed to pay his proportion. In such case, they are joint tenants, each holding the legal title to an undivided interest, and the payor has a lien for the proportion which was to be paid by his co-tenant on the interest of such co-tenant.

2. LIEN. *Attachment.* But the lien of the payor is inferior to the lien of an attaching creditor of the co-tenant.

FROM SULLIVAN.

Appeal from the Chancery Court. H. C. SMITH, Chancellor.

No counsel marked for either party.

NICHOLSON, C. J., delivered the opinion of the court.

Morrell filed his attachment bill against Cawood, and attached his undivided interest in a tract of land of sixty-five acres, conveyed by Mason Ford to A. Cawood and C. U. Sampson jointly. A decree was rendered in favor of Morrell, and the interest of Cawood sold and bought by J. M. Smith for $505.

At the same term at which the decree for the ale of Cawood's interest in the land was made, C. U. Sampson filed his petition in the cause, in which he denied that Cawood had any real interest in the land, but that the entire purchase money was paid by him,

Morrell v. Cawood.

and therefore that no part of the land was subject to be sold for the debts of Cawood. He asked to be allowed to become a party to the suit by answer or cross-bill, and to control the right of Morrell to subject Cawood's interest to sale. Leave was given, but the parties all agreed that the sale already made to J. M. Smith should be confirmed, and that the litigation should go on as to the proceeds of the sale.

At the hearing of the cause, after proof was taken by Sampson and Morrill, the chancellor held, that as Sampson had paid the entire purchase money of the land, he had a superior lien therefor as against Morrell's attachment, although the legal title to an undivided interest in the land was vested in Cawood jointly with Sampson.

The question presented, upon the appeal by Morrell, is as to the correctness of this decree.

It appears that John A. Murphy had owned the land in controversy, and sold and conveyed it to Mason Ford, but held Ford's note for $1,400 for the purchase money. It is shown by Sampson, in his testimony, that he bought the land from Ford and agreed to pay his note held by Murphy. He says he paid off the note to Murphy, except $102, for which he executed his own note to Murphy and took up Ford's note. In raising the money to pay Murphy, Sampson, through and by the aid of Morrell, borrowed $137 of George Smith. Sampson then proposed to Morrell that he might have an interest in the land, but he declined taking it, but said Sampson could let Cawood have an interest, and if so, he

12—VOL. 8.

(Morrell) would pay the $137 to Smith, and that Cawood could give the credit for that amount.

Sampson says he then agreed to let Cawood have a part of the land—half or as much as he would pay for. By this agreement with Cawood, the latter was to pay a debt of Sampson of $237 to M. Y. Acre, also the note of $102 to Murphy, and to pay Ford a balance that was due to him for the land. After this agreement was made Sampson consented that Ford execute a deed to himself and Cawood jointly, which was done. He then states that Cawood failed to pay anything, but that he had to pay, and did pay, the entire purchase money, and that Cawood never paid to him anything on the land.

Upon these facts it is clear that no trust relation was created between Sampson and Cawood. The land was purchased by Sampson for himself, and with his own money; but before taking a deed from Ford, his vendor, he agreed to let Cawood have an interest in the land, and after agreeing upon the specific amounts to be paid by Cawood, he then took from Ford a deed conveying the land to himself and Cawood jointly, but there is nothing on the face of the deed showing his agreement with Cawood, it is an absolute deed, acknowledging the payment of the purchase money.

It follows, that Cawood was vested with the legal title to an undivided interest, which is presumed to be one-half, and by the parol agreement between him and Sampson he became debtor to Sampson for one-half of the price of the land, for which Sampson had the vendor's lien. But Morrell levied his attachment

on Cawood's interest by which a lien was fixed thereon superior to the implied lien of Sampson.

The result is, that the chancellor's decree was erroneous and must be reversed, and a decree rendered in favor of Morrell's right to the fund. The decree against J. M. Smith on the purchase money notes will be affirmed, and the costs of this court will be divided between Sampson and J. M. Smith.